## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| RICKEY L. TUCKER, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| INTERFACE INC., doing business as Interface, and JOHNNY PRESTRIDGE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Rickey L. Tucker, by and through the Undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Interface, Inc., doing business as Interface, and Johnny Prestridge, respectfully showing the Court as follows:

## I.  JURISDICTION AND VENUE

### 1.

Plaintiff Rickey L. Tucker brings the above-captioned case pursuant to:  (a) the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA") for interference and retaliation; (b) 42 U.S.C. §§ 2000e, *et seq.*, Title VII

of the Civil Rights Act of 1964, as amended, ("Title VII") for race discrimination and retaliation; (c) 42 U.S.C. § 1981, the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1981 ("Section 1981") for race discrimination and retaliation; (d) 29 U.S.C. §§ 621, *et seq.*, Age Discrimination in Employment Act of 1967, as amended, ("ADEA") for age discrimination and retaliation; and (e) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Northern District of Georgia, Newnan Division, ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are located, and a substantial part of the events giving rise to the asserted claims occurred in, the Northern District of Georgia, Newnan Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Newnan Division.

4.

Prior to commencing the above-captioned case, Plaintiff satisfied all administrative prerequisites to institute this action.  Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2019-06929) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated April 28, 2021.

## II.  PARTIES

5.

Plaintiff Rickey L. Tucker ("Tucker" or "Plaintiff") is a sixty-two (62) year old African-American male, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

6.

At all relevant times, Tucker was an "employee" within the meaning of, among other laws, FMLA, 29 U.S.C. § 2611, Title VII, 42 U.S.C. § 2000e(f), and the ADEA, 29 U.S.C. § 630.

7.

Defendant Interface, Inc., doing business as Interface, ("Interface") is a Georgia corporation providing commercial flooring products affecting inter-State commerce through its facilities with a principle office located at 1280 West Peachtree Street, NW, Atlanta, Georgia 30309.

8.

Interface operates a facility located at 1503 Orchard Hill Road, LaGrange, Georgia 30240 ("LaGrange Location").

9.

Interface is an "employer" with the meaning of, among other laws, FMLA, 29 U.S.C. § 2611, Title VII, 42 U.S.C. § 2000e, and the ADEA, 29 U.S.C. 603, with more than fifty (50) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

10.

Interface may be served with process through Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

11.

Defendant Johnny Prestridge ("Prestridge") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

12.

Prestridge was, at all relevant times, Interface's Manager at the LaGrange Location, involved in the day-to-day operation of the LaGrange Location and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of the LaGrange Location.

13.

At all relevant times, Prestridge supervised Tucker while participating in the unlawful interference, as well as discriminatory, retaliatory, and tortious conduct described herein.

14.

Prestridge may be served with process at the LaGrange Center located at 1503 Orchard Hill Road, LaGrange, Georgia, 30240.

## III.  FACTUAL ALLEGATIONS

15.

Tucker re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

16.

Interface provides commercial flooring products through Locations in the United States, Canada, and Brazil.

17.

Tucker, sixty-two (62) year old African-American male, was formerly employed by Interface as a Sample Coordinator and, at all relevant times, Tucker's wife was diagnosed with, and receiving treatment for, cancer.

18.

At all relevant times, Tucker was a member of a protected class, a qualified individual, and/or covered by Title VII, Section 1981, and/or the FMLA.

19.

In or about July 1982, Tucker began working at Interface, where Tucker served as a Print Operator before becoming a Sample Coordinator at the LaGrange Location.

20.

As a Sample Coordinator, Tucker was responsible for fulfilling sample orders operating order devices, operating equipment required to ship carpet samples, assisting the loading of samples, and performing other related duties and tasks assigned by management.

21.

While employed by Interface, Tucker diligently performed all tasks while meeting or exceeding all performance expectations.

22.

After commencing employment with Interface in 1982, Tucker was supervised by several Managers, who did not take any adverse employment actions related to Tucker's attendance, performance, and/or professionalism.

23.

In or about July 2016, Prestridge became Manager of the LaGrange Location.

24.

Immediately upon becoming Manager of the LaGrange Location, Prestridge began harassing and discriminating against Tucker based upon Tucker's race and age. For example, Prestridge constantly directed Tucker to perform duties and tasks

that were outside of Tucker's job description, including, but not limited to, cleaning the parking lot and attending meetings prior to Tucker's shift. If Tucker did not "grin and bow" or exhibit other mannerisms of subjugation, Prestridge criticized Tucker. Prestridge did not subject the non-African-American or significantly younger employees to the same treatment.

25.

During the course of employment, Tucker's wife was diagnosed with, and began receiving treatment for, cancer (serious heal condition). Because Tucker was required to care for his wife while she received cancer treatments, Tucker obtained, from Human Resources ("HR"), the required FMLA certification, which was completed by a physician and returned to HR. In or about January-February 2019, Interface approved Tucker's request for intermittent FMLA leave.

26.

Despite the approved intermittent FMLA leave, Defendants interfered with Tucker's rights under the FMLA. For example, Defendants never notified Tucker of Tucker's rights-and-responsibilities while on FMLA leave. Moreover, although permitted to schedule and work half-days, which was necessary to provide case and assistance to Tucker's wife who was receiving cancer treatment, Prestridge would

not allow Tucker to work half-days.  Additionally, although Tucker was afforded a grace-period, if Tucker arrived at work even one (1) minute after the scheduled shift time, Prestridge sought to write-up Tucker.

27.

Whenever Prestridge interfered with Tucker's FMLA rights, or harassed, discriminated against, or subjected Tucker to unprofessional treatment, Tucker complained to Jerry Hall ("Hall"), Interface's Manager of Customer Development. Similarly, Tucker complained to Brad Spratlin ("Spratlin"), Interface's Human Resources Manager.  In response, Spratlin stated, "How will you feel if you have to go home and say you got fired because you didn't do what your manager asked you to do?"  However, Hall and Spratlin refused and failed to take any remedial action based upon Tucker's complaints about race-based and age-based discrimination.

28.

Immediately following Tucker's complaints about interference, discrimination, and other unlawful employment practices, Defendants engaged, by and through Defendants' agents, representatives, and/or employees, in a retaliatory campaign against Tucker.  For example, Prestridge would often make negative comments concerning Tucker in the presence of other Interface employees.

Prestridge prevented Tucker from working overtime hours necessary to complete professional duties.  Moreover, Prestridge sent other Interface employees to harass and micromanage Tucker.

### 29.

More egregiously, following Tucker's complaints about interference, harassment, as well as age and race discrimination, Defendants began to write-up and verbally counsel Tucker without reason or justification.  For example, although Tucker had an abundance of sick leave available, personal time off, and vacation leave, as well as approved FMLA intermittent leave, anytime Tucker was late (even one minute late) while caring for Tucker's wife, Defendants would counsel Tucker. Although Defendants were aware of Tucker's need to care for his wife, Defendants continued to harass Tucker without reason or justification.

### 30.

Despite the unjustified counseling and write-ups, as well as Defendants' failure to provide Tucker with an FMLA rights-and-responsibility notice, Tucker made every effort to address any and all performance and/or attendance issues at Interface.

31.

In or about late June 2019, James White ("White") and Travis Copeland ("Copeland"), Interface employees, advised Tucker that another Interface employee, Dakota McClellan ("McClellan"), thirty (30) year old, Caucasian female, advised them that she would replace Tucker within a week.

32.

Consistent with White's and Copeland's advisement, on or about July 4, 2019, Defendants terminated Tucker's employment, *purportedly* due to tardiness caused by Tucker's approved leave to care for his wife  and insubordination.

33.

Prior to terminating Tucker's employment, Defendants never provided Tucker, who accrued substantial leave, with an FMLA rights-and-responsibilities notice (or any other information or policies concerning leave/attendance). Moreover, several other non-African-American and significantly younger Interface employees were repeatedly tardy, late, and/or absent without reprimand and/or termination of employment.  For example, Lisa Nelson ("Nelson") (Caucasian Yarn Technician), Lewis Woodward ("Woodward") (Caucasian Yarn Technician), Diane Dean ("Dean") (Caucasian Yarn Prep Technician), and Barbara Young ("Young")

(Caucasian Yarn Prep Technician) were often tardy, late, and/or absent from work without any adverse employment actions. Woodward often slept on the clock in violation of Interface rules and policies. Although observing Woodward's conduct and behavior, Prestridge never reprimanded or terminated Woodward's employment.

34.

As Copeland predicted, Defendants replaced Tucker with McClellan, a thirty (30) year old Caucasian female.

35.

Although Tucker diligently performed, Defendants treated, by and through Defendant's agents, representatives, and/or employees, Tucker unequivocally and significantly less favorably than non-African-American and younger co-workers, including, but not limited to, Woodward, McClellan, Nelson, Dean, and Young, who were in similar and comparable positions at Interface.

36.

Defendants terminated Tucker's employment and punished Tucker, who sought to exercise FMLA intermittent leave to care for Tucker's wife, who was receiving cancer treatments.

## IV.  CLAIMS FOR RELIEF

### COUNT I
### INTERFEERNCE
### IN VIOLATION OF THE FMLA
**(Against Interface)**

37.

Tucker re-alleges and incorporates, by reference, each of the foregoing Paragraphs as if fully restated herein.

38.

The FMLA prohibits employers from interfering with employees' exercises of rights under FMLA and provides that, when an employer acquires knowledge than an employee may qualify for FMLA leave, the employer must evaluate whether the employee qualifies for FMLA protection, provide notice to the employee of the eligibility for and rights under the FMLA, as well as advise the employee of the rights-and-responsibilities under the FMLA.

39.

Because Tucker was required to care for his spouse diagnosed with cancer, Tucker was entitled to take leave pursuant to the FMLA.

40.

At all times relevant to this action, the relationship between Tucker and Interface was an employer-employee relationship within the meaning of the FMLA, such that a cause of action exists where Interface is an employee as defined by the FMLA, Tucker was an eligible employee as defined by the FMLA, and Defendants interfered with Tucker's entitlement to take leave pursuant to the FMLA.

41.

At all times relevant to this action, Interface acted by and through its agents and employees, including, but not limited to, Prestridge, each of whom acted in the course and scope of their employment with and for Interface.

42.

Tucker had an "entitlement to leave" as defined by the FMLA, 29 U.S.C. § 2612(a)(1) when Tucker was required to take care of Tucker's wife, who was diagnosed and receiving treatment for cancer, which is a serious health condition.

43.

Tucker satisfied all FMLA prerequisites.

44.

In or about January-February 2019, Interface approved Tucker's request for intermittent FMLA leave while Tucker provided care to Tucker's wife was receiving treatment for cancer.

45.

Defendants violated the FMLA by interfering with Tucker's rights when Defendants, while Tucker was on approved intermittent FMLA leave, prevented Tucker from scheduling and working half-days so Tucker could provide care to his wife who was receiving cancer treatment and failed to provide Tucker with notice of Tucker's rights-and-responsibilities while on FMLA leave.

46.

Due to Defendants' interference, Tucker was unable to exercise Tucker's full rights under FMLA in a meaningful way.

47.

As a direct and proximate result of the above-described actions, Defendants have deprived Tucker of an employment benefit.

48.

Additionally, Tucker has suffered and continues to suffer loss income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits, as well as humiliation, emotional pain, mental distress, inconveniences, and mental anguish.

49.

Defendants' interferences were willful, deliberate, and intended to cause Tucker harm and/or were committed with reckless disregard of harm caused to Tucker, and in derogation of Tucker's Federally-protected rights.

50.

As a result, Tucker is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, including, but not limited to, back pay, front pay or reinstatements, attorney's fees, and costs of litigation.

51.

Tucker is also entitled to liquidated damages for Defendants' violation of Tucker's rights under the FMLA because Defendants' actions were willful violations of the FMLA.

## COUNTS II AND III
## RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII AND SECTION 1981
### (Against Defendant Interface)

52.

Tucker re-alleges and incorporates herein, by reference, the preceding Paragraphs as if set forth fully herein.

53.

Title VII and Section 1981 prohibit employers from discriminating against an employee based upon, *inter alia*, race, ethnicity, and/or national origin.

54.

As an African-American male, Tucker is a member of a protected class under Title VII and Section 1981.

55.

At all relevant times, Tucker diligently performed and was qualified for the position of Sample Coordinator with Interface.

56.

At all times relevant to this action, the relationship between Tucker and the Interface was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

57.

During the course of Tucker's employment, the Interface acted by and through its agents and employees, including, but not limited to, Prestridge, each of whom acted in the course and scope of their employment with and for Interface.

58.

Tucker's education, experience, skill, and performance exceeded that of other non-African-American, similarly situated Interface employees, including, but not limited to, Woodward, McClellan, Nelson, Dean, Young, and the other similarly situated employees at Interface whose employment were not terminated or subjected to repeated adverse employment actions.

59.

Despite Tucker's qualifications and experience, Interface intentionally discriminated against Tucker on the basis of race by, *inter alia*, subjecting Tucker to unfair treatment compared to similarly-situated non-African-American employees, subjecting Tucker to unjustified counseling write-ups, terminating Tucker's employment, as well as other unlawful actions based solely upon race and/or ethnicity.

60.

Tucker was treated less-favorably than similarly-situated, non-African-American Interface employees in violation of Title VII and Section 1981.

61.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Tucker's employment with Interface.

62.

Defendants' actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

63.

Defendants willfully and wantonly disregarded Tucker's statutory rights and Defendants' discrimination was undertaken in bad faith.

64.

As a direct and proximate result of the above-described unlawful employment practices, Tucker has suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish, for which Tucker is entitled to recover.

65.

Defendants' intentional and illegal conduct entitles Tucker to compensatory damages, as well as any and all other remedies available under Title VII and Section 1981.

66.

Defendants' actions with regard to Tucker demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Tucker to an aware of punitive damages to deter, punish, and penalize Interface for and from similar future conduct.

## COUNT IV:
## AGE DISCRIMINATION
## IN VIOLATION OF THE ADEA
### (Against Defendant Interface)

67.

Tucker re-alleges and incorporate herein, by reference, the preceding Paragraphs as if set forth fully herein.

68.

At all relevant times, Tucker was in a protected age group, exceeding the age of forty (40) years old, and was qualified for employment with Interface as a Carpet Sampler and other positions.

69.

At all relevant times, the relationship between Tucker and Interface was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of age is alleged to be the cause of an adverse action directed to the employee by the employer.

70.

At all relevant times, Interface acted by and through its agents and employees, each of whom acted in the course and scope of their employment with and for Interface.

71.

Despite Tucker's education, experience, performance, and qualifications. Interface violated the ADEA by, *inter alia*, requiring Tucker to perform duties outside of Tucker's job description, counseling and writing-up Tucker without justification, terminating Tucker's employment, and subjected Tucker to other adverse employment actions based upon Tucker's age.

72.

Meanwhile, Interface has shown, and continues to show, favoritism to similarly situated, younger Coordinators, Technicians, and other Interface employees described herein.

73.

As a direct and proximate result of Interface's conduct, Tucker has suffered and will continue to suffer damages, including, but not limited to, emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

74.

Tucker is entitled to an award of back pay and benefits, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

75.

Furthermore, Interface's conduct was "willful" as defined under the ADEA and, therefore, Tucker is entitled to liquidate damages in an amount equal to compensatory damages.

## COUNTS V, VI, VII, AND VIII
## RETALIATION
## IN VIOLATION OF FMLA, TITLE VII, SECTION 1981, AND ADEA
### (Against Defendant Interface)

76.

Tucker re-alleges and incorporates by reference each of the foregoing Paragraphs as if fully restated herein.

77.

The FMLA, Title VII, Section 1981, and the ADEA prohibit employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights, under the FMLA Title VII, Section 1981, and the ADEA.

78.

At all relevant times, Tucker was an eligible employee who was entitled to leave pursuant to the FMLA to care for Tucker's wife who was diagnosed with and receiving treatment for cancer, a serious health condition.

79.

As sixty-two (62) year old African-American, Tucker is a member of protected classes under Title VII, Section 1981, and the ADEA.

80.

During the relevant period, the relationship between Tucker and Interface was an employer-employee relationship within the meaning of the FMLA, Title VII, Section 1981, and the ADEA, such that a cause of action exists where retaliation on the basis of opposing discrimination, reporting discrimination, and/or exercising protected Federal rights are alleged to be the causative agent of adverse employment action(s) directed to Tucker by Defendants.

81.

During the course of Tucker's employment, Interface, including Interface's agents and employees, unlawfully and knowingly discriminated against Tucker based upon, among other things, race and age in violation of, *inter alia*, Title VII, Section 1981, and the ADEA.

82.

During the course of Tucker's employment, Interface, including Interface's agents and employees, unlawfully and knowingly interfered with Tucker's entitlement to leave pursuant to the FMLA.

83.

Tucker complained to Interface's employees, including, but not limited to Hall and Interface's HR Manager, about unlawful employment practices based upon race and age, as well as the interference with FMLA leave.

84.

Following Tucker's complaints about, among other things, unlawful employment practices based on race and age, Defendants took additional adverse employment actions against Tucker, including, but not limited to, unjustified counseling and write-ups, negative comments, preventing Tucker from working overtime, micromanagement, prohibiting Tucker from taking approved intermittent FMLA leave, as well as the termination of employment based solely upon complaints of interference, race discrimination, and age discrimination in violation of, *inter alia*, the FMLA, Title VII, Section 1981, and the ADEA.

85.

Defendants' adverse employment actions against Tucker constitute unlawful retaliation against Tucker in violation of, *inter alia*, the FMLA, Title VII, Section 1981, and the ADEA.

86.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Tucker harm and/or were committed with reckless and wanton disregard of the harm causes to Tucker in derogation of Tucker's Federally-protected rights.

87.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

88.

The retaliation to which Tucker was subjected by Defendants entitle Tucker to all appropriate relief afforded under the law.

89.

As a result of Defendants' intentional and unlawful actions, Tucker has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

90.

Defendants' actions with respect to Tucker have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Tucker is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT IX:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Interface and Prestridge)

91.

Tucker re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

92.

Defendant's statements, conduct, and behavior, by and through Defendant's agents, representatives, and/or employees, towards Tucker were intentional and reckless, extreme and outrageous, causing Tucker severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

93.

Defendant's statements, conduct, and behavior, by and through Defendant's agents, representatives, and/or employees, towards Tucker demonstrate, among other things, a "retaliatory animus."

94.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Tucker and Tucker's income and/or livelihood.

95.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Tucker, Defendants knew that Tucker was dependent upon the income received from Interface.

96.

Defendant repeatedly assigned Tucker duties and responsibilities outside the scope of Tucker's employment, subjected Tucker to discriminatory, retaliatory, and harassing conduct, subjected Tucker to unjustified counseling and write-ups, subjected Tucker to unjustified adverse employment actions, terminated Tucker's employment, and subjected Tucker to other unlawful and tortious conduct.

97.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Tucker.

98.

As a result of Defendants' conduct, Tucker has and will continue to suffer severe emotional distress and other damages for which Tucker is entitled to recover.

## COUNT X
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Against Defendant Interface)

99.

Tucker re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

100.

As a result of the actions taken by Defendants, Tucker is suffering, among other things, discrimination based on race and age, as well as severe emotional distress.

101.

Interface owed Tucker a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory or tortious conduct.

102.

By negligently retaining and supervising its employees, including, but not limited to Prestridge, Interface breached its duty to hire, retain, and supervise employees who would lawfully behave.

103.

Interface knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but no limited to, Prestridge, to engage in unlawful conduct against Tucker.

104.

By failing to engage in any corrective or remedial action, Interface ratified, condoned, and/or adopted its employees' unlawful conduct.

105.

As a direct and proximate result of Interface's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Prestridge, Interface suffered damages.

106.

Interface's negligent conduct entitles Tucker to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)    That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)    That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, Title VII, Section 1981, the ADEA, and the laws of the State of Georgia were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of Title VII, Section 1981, the ADEA, and the laws of the State of Georgia;

(g)     That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)      That the Court grant a trial by jury as to all triable issues of fact; and

(j)      Further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 26th day of July, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Rickey L. Tucker*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RICKEY L. TUCKER, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| INTERFACEFLOR, LLC, doing business as Interface, and JOHNNY PRESTRIDGE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing First Amended Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 26th day of July, 2021.

MOLDEN & ASSOCIATES

_____
T. ORLANDO PEARSON
Georgia Bar No. 180406